UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH L. ROBERTS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:18-cv-1881 SRW |
| | ) |
| DAVID VANDERGRIFF,[1] | ) |
| | ) |
| Respondent(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Kenneth L. Roberts for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.    BACKGROUND**

In 2013, a jury in St. Louis County, Missouri convicted Petitioner of two counts of forcible sodomy with a deadly weapon, two counts of first-degree assault, two counts of armed criminal action, and one count of felonious restraint. He was sentenced to a total of 110 years imprisonment. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed his convictions. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's

---

[1] Petitioner is currently incarcerated at the Easter Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. *See Missouri Dept. Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited January 18, 2021). David Vandergriff is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

claims and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's convictions as follows:

> On the night of July 15, 2009, Defendant invited his friend W.A., then twenty years of age, into his house. W.A. accepted, and Defendant and W.A. talked in Defendant's room. Defendant began to touch and kiss W.A., and she asked him to stop. Defendant complied. Approximately ten minutes later, Defendant hit W.A. on the right side of her face with a liquor bottle and demanded that W.A. have sex with him. Defendant got on top of W.A. and tried to unbutton her pants with one hand while holding the liquor bottle in the other. W.A. told Defendant that she was menstruating, and Defendant ordered her to perform oral sex on him. He pushed W.A. onto the floor and forced his penis in her mouth. Eventually, W.A. convinced Defendant to allow her to stop and assured Defendant that everything was "okay" between them. W.A. left Defendant's house and drove to Christian Northeast Hospital, which was located two minutes away.
>
> On the night of August 13, 2009, after speaking with nineteen-year-old N.S. on a telephone chat line, Defendant invited her to his grandmother's home. When N.S. arrived, Defendant led her to the basement and offered her a drink, which she declined. Defendant pressed his body against N.S. and held a knife to her throat. When she tried to leave, Defendant hit N.S. on the back of her head with a liquor bottle. As a result, N.S. fell unconscious and the liquor bottle shattered. When N.S. awoke, Defendant was on top of her, forcing his penis into her mouth. N.S. started to scream, and Defendant threated to kill her. Defendant rubbed his penis against N.S. and stabbed her in the back of her leg with the knife. Eventually, Defendant's grandmother asked "what was going on," N.S. ran upstairs, exited the house, and drove for approximately thirty seconds to Quick Trip, where someone contacted the police. When the police arrived, a detective drove N.S. to Christian Northeast Hospital, which was located about two minutes away.

(ECF No. 10-3, at 2-3.).[2]

## II.    STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on

---

[2] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. This Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

2

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

3

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### III. DISCUSSION

Petitioner raises five grounds for relief in his Petition: (1) he was denied his rights to due process and a public trial under the Fifth, Sixth, and Fourteenth Amendments when the court's bailiff closed the courtroom to the public before the start of voir dire; (2) he received ineffective assistance of counsel when his appellate counsel failed to raise on appeal Petitioner had been denied his right to a public trial; (3) he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress evidence seized without a warrant at his grandmother's house; (4) he received ineffective assistance of counsel when his trial counsel did not present mitigating evidence and argue for a more favorable sentence during Petitioner's sentencing proceedings; and (5) he was denied his rights to due process, a fair trial, and to be tried only for offenses charged when the trial court denied Petitioner's motion to dismiss the improperly joined counts and failed to sever them.

### A. Ground One – Public Trial

In his first ground for relief, Petitioner asserts he was denied his right to a public trial when a bailiff asked his family to leave the courtroom during voir dire. The Missouri Court of Appeals described the facts surrounding this claim:

> Trial began February 25, 2013. Prior to the start of voir dire, the bailiff removed all persons in the courtroom so there would be space for all members of the sixty-person venire panel. Voir dire was then conducted and the jury panel was selected with no objection or mention made on the record about anyone being excluded from the courtroom during voir dire.

4

(ECF No. 10-6, at 2-3). Petitioner raised this claim in his *pro se* PCR motion, his amended PCR motion, and his appeal of the denial of his PCR motions. Ultimately, the Missouri Court of Appeals denied Petitioner's claim. In its opinion, it included a detailed analysis of *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1906 (2017) and found as follows:

> The motion court found this claim was not cognizable in this proceeding because it should have been raised on direct appeal and there was no rare and exceptional circumstances present permitting the court to consider it. We conclude the motion court did not clearly err in denying Roberts' claim.
>
> . . .
>
> Here, like in *Weaver*, Robert's counsel did not object at trial or raise this claim in his direct appeal. Roberts has raised it for the first time in his post-conviction proceeding. Unlike in *Weaver*, however, Roberts has not argued that his trial counsel was ineffective for not objecting to the courtroom being closed during voir dire. Instead, Roberts argues that the court erred in denying his right to a public trial and he should be given a new trial. We find Roberts' claim fails for a number of reasons.
>
> First, it is well-established that allegations of trial error involving constitutional violations are not cognizable in a Rule 29.15 motion without showing exceptional circumstances for not raising the grounds on direct appeal. Roberts' only explanation for not raising this claim on direct appeal is that the claim was not obvious from the record. This is no showing of exceptional circumstances for not raising his claim on direct appeal.
>
> Further, Roberts' explanation is refuted by both his own and his trial counsel's testimony at the evidentiary hearing. Both testified they were aware that Roberts' family had been removed from the courtroom during voir dire. Thus, this claim could and should have been raised in Roberts' direct appeal. We do not conclude the motion court's finding that this claim was not cognizable here to be clearly erroneous.
>
> Second, even if Roberts' claim was cognizable, we conclude the same reasoning in *Weaver* requiring prejudice to be shown in a claim alleging ineffective assistance for failing to object to the courtroom being closed during voir dire also must be shown in a claim alleging court error for violating a defendant's right to public trial. This is because the reason for placing the burden on Roberts is the same. Had Roberts objected to the courtroom closure, the trial court would have had the opportunity to address the situation. The judge testified he would have done as much at the evidentiary hearing, testifying he would have tried to accommodate a request for everyone to be in the courtroom if possible. But because Roberts did not raise it, the trial court was deprived of any opportunity to address the situation and

>did not even know it had occurred. Further, Roberts' claim would also have been best considered on direct appeal and not here on post-conviction review. Roberts' trial occurred in February 2013 and his direct appeal was decided in July 2014. Roberts' hearing on this claim did not occur until April 2016. At the hearing there was conflicting testimony about whether the judge was present when the bailiff removed Roberts' family and friends, about whether Roberts' family and friends left the courtroom without requesting to stay, and other inconsistencies with regard to how and what occurred. Had this issue been decided [or] considered on direct appeal perhaps these inconsistencies would be absent. Finally, the costs and uncertainties of Roberts having a new trial are also greater now given the time that has elapsed. Thus, the finality interest is more at risk.
>
>For these reasons, we find that Roberts had the burden to show how he was prejudiced, and he has failed to do so here. A review of the voir dire proceedings confirms this as there is nothing to suggest that any potential harms flowing from a courtroom closure occurred in this case. See *Weaver*, 137 S. Ct. at 1913; *State v. Jones*, No. ED104588, 2017 WL 2822507, at *4 (Mo. App. E.D. June 30, 2017). Point denied.

(ECF No. 10-6, at 9, 11-13) (internal citations omitted except where noted).

Petitioner now argues the Court of Appeals' decision was an unreasonable application of clearly established federal constitutional law and an unreasonable determination of the facts. He asserts he does not have to demonstrate prejudice but alleges he can do so. Petitioner's second cousin was on the panel and told the court about his uncle serving life in prison during voir dire. (ECF No. 13-2 at 12-13, 66). According to Petitioner, if his family had been allowed to remain in the court room, they could have helped pick a more favorable jury after Petitioner's cousin made his statement. However, the prospective juror noted he was first cousins with Petitioner's mother. He also stated he never met Petitioner and never spoke to him. Petitioner fails to explain how his family would have helped in jury selection when the same information was already known by Petitioner and trial counsel. The allegation of prejudice is without merit.

Petitioner's claim is also procedurally barred. When a state court decides a claim on state procedural grounds, rather than on the merits, federal habeas review is barred, because the state court decision rests on independent and adequate state procedural grounds. *Coleman v.*

6

*Thompson,* 501 U.S. 722, 730 (1991). Such a claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750. The independent and adequate state ground doctrine is jurisdictional; thus, the Court must raise it even if a respondent does not. *Id*. at 729.

In this case, the Court of Appeals dismissed Petitioner's PCR appeal on this point for failing to raise this argument on direct appeal. (ECF No. 10-6, at 11). "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Johnson v. Lee*, 136 S. Ct. 1802, 1805 (2016) (quoting *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006)). "Likewise, state postconviction remedies generally may not be used to litigate claims which were or could have been raised at trial or on direct appeal." *Id*. (internal quotations omitted). Missouri has such a rule, which the Court of Appeals applied in this case. "Allegations of trial error involving constitutional violations are not cognizable in a Rule 29.15 motion without a showing of exceptional circumstances for not raising the constitutional grounds on direct appeal." *Matthews v. State*, 175 S.W.3d 110, 115 (Mo. 2005) (citing *State v. Redman*, 916 S.W.2d 787, 793 (Mo. 1996)). The Court of Appeals dismissed Petitioner's appeal regarding his alleged denial of a public trial on this basis. Thus, the state court decision rests on independent and adequate state procedural grounds.

The Court of Appeals also addressed Petitioner's argument on the merits, giving an alternative reason for dismissal. The court's alternative ruling does not erase the procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Petitioner

fails to demonstrate cause for the default and actual prejudice, or that this Court's failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Therefore, this claim is procedurally barred, and the Court must dismiss it.

## II.     Ground Two – Ineffective Assistance of Appellate Counsel

In his second ground for relief, Petitioner asserts he received ineffective assistance of counsel when his appellate counsel failed to raise the issue of his denial of a public trial in his direct appeal. Petitioner did not raise this claim before the state court.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848)). A habeas petitioner under § 2254 may avoid procedural default only by showing there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In his Petition, Petitioner argues he can show cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012). However, as Respondent points out, the exception to procedural default established in *Martinez* does not extend beyond claims of ineffective assistance of trial counsel. *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (declining to extend *Martinez* to claims alleging ineffective assistance of appellate counsel). In his Reply, Petitioner argues, for the first

8

time, a fundamental miscarriage of justice will occur if the Court does not address this ground for relief. First, the Court notes that "[a]s a general rule," arguments raised for the first time in a reply brief are not considered by the Court. *Barnhan v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006). Second, even if the Court considered the argument, Petitioner does not establish the fundamental-miscarriage-of-justice exception because he has not presented any evidence of his actual innocence. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) ("To fall within the fundamental-miscarriage-of-justice exception, a habeas petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."). This claim is procedurally defaulted, and the Court must dismiss it.

### III.     Ground Three – Ineffective Assistance of Trial Counsel

In his third ground for relief, Petitioner argues he received ineffective assistance of counsel when his trial counsel did not file a motion to suppress evidence seized without a warrant from his grandmother's house. Petitioner did not raise this claim before the state courts. Therefore, it is procedurally defaulted unless he can show cause and prejudice for the default. Petitioner asserts he will argue *Martinez* applies but then provides no support for why *Martinez* would actually apply. In his Reply, Petitioner argues he is entitled to an evidentiary hearing on this claim because reasonable jurists could disagree as to both trial counsel's performance and the prejudice suffered by Petitioner. Again, the Court notes the general rule that arguments raised for the first time in a reply brief are not considered by the Court. *Barnhan*, 441 F.3d at 584. Nonetheless, the Court will address Petitioner's argument.

Under *Martinez*, "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." 566 U.S. at 9. When "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as is the case in Missouri, "a

9

prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances." *Id*. at 14. The first is where the state court did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second circumstance, applicable here, "is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of" *Strickland*. *Id*. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Petitioner does not establish the *Martinez* exception applies in this case. First, he has not established his PCR counsel was ineffective for not raising this claim. His PCR counsel raised 23 claims in his amended PCR motion. "Competent performance does not require counsel to recognize and raise every conceivable constitutional claim." *Deck v. Jennings*, 978 F.3d 578, 584 (8th Cir. 2020). When counsel does not raise a claim, it "is not deficient performance unless that claim was plainly stronger than those actually presented." *Id*. (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017)). Petitioner has not shown this claim is stronger than any of the 23 claims his PCR counsel did raise.

Second, he has not established his underlying ineffective assistance of trial counsel claim. At trial, Detective Robert Vogel testified he went to Petitioner's grandmother's house, with four other officers, after learning from N.S. she had been assaulted in the basement of the home. (ECF No. 13-1, at 111-12). Detective Vogel asked Petitioner's grandmother to sign a consent to search form which she initially refused to sign. *Id*. at 124. After informing her if she did not consent to the search, he would need to get a search warrant which would result in her having to leave the house or remain in the living room until he got the search warrant, Petitioner's grandmother consented to the search. *Id*. at 126. Detective Vogel and others then searched the basement

finding evidence of blood, broken glass, and a broken liquor bottle. *Id*. at 127-29. Petitioner now alleges, before trial, his grandmother denied ever giving consent to search the basement. The record before the Court, specifically the trial testimony from Detective Vogel, refutes Petitioner's allegation. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Petitioner has not shown his grandmother did not consent to the search of her home, and his trial counsel cannot be ineffective for failing to challenge a valid search. Petitioner fails to establish his underlying ineffective assistance of counsel claim. For these reasons, Petitioner cannot establish the *Martinez* exception. This claim is procedurally defaulted, and the Court will dismiss it.

   **IV.**  **Ground Four – Ineffective Assistance of Trial Counsel**

In his fourth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to present any mitigating evidence and failed to argue for a more favorable sentence during Petitioner's sentencing proceedings. According to Petitioner, his counsel told the jury that Petitioner had a possibility of rehabilitation and argued Petitioner should be sentenced "somewhere in the middle," but did nothing else to attempt to mitigate his sentence.

The Court is not convinced trial counsel's sentencing strategy was ineffective with the jury. The prosecutor requested sentences of life in prison on four of the counts and maximum sentences on the other three counts. The jury recommended sentences ranging from five to twenty-five years in prison on the various counts. The trial court later imposed a sentence of 110 years in prison by running all of the sentences consecutively.

Petitioner raised this claim in his *pro se* PCR motion, his amended PCR motion, and his PCR appeal. The Missouri Court of Appeals denied Petitioner's claim, finding as follows:

11

> There is a strong presumption counsel's failure to call a witness at sentencing is a matter of reasonable trial strategy and will not support an ineffective assistance of counsel claim. In order for a movant to establish the performance component of a claim counsel was ineffective for failing to investigate and call a witness at sentencing, the movant must allege sufficient facts, not refuted by the record, showing: (1) counsel's decision involved something other than reasonable trial strategy; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified if called; and (4) the witness's testimony would have aided in the movant's defense. To demonstrate prejudice a movant must show that but for counsel's alleged deficient performance during sentencing, there is a reasonable probability he would have received a lesser sentence. The questions of prejudice from failing to call all available witnesses is a matter that can only be determined case-by-case depending on the totality of the circumstances.
>
> Here, the trial court did not clearly err in finding that Roberts failed to allege sufficient facts to show that any of his proposed witness's testimony would have aided in his defense. While Roberts alleges that numerous family members or any person could "humanize" him, he fails to allege what any witness's testimony would have been or how any testimony could help "humanize" him. Further, Roberts has not demonstrated a reasonable probability he would have received a lesser sentence had counsel made any different argument than the one made or had called any witnesses. For those reasons, we cannot find that the motion court clearly erred. Point denied.

(ECF No. 10-6, at 15-16) (internal citations omitted).

Petitioner now argues the Court of Appeals misapplied the *Strickland* standard and made its decision based on an unreasonable determination of the facts in light of the evidence presented. Petitioner asserts a complete picture of his character was not presented to the jury including his mental health history since the age of 12. Petitioner also argues reasonably competent counsel would have informed the jury of the judge's discretion to run sentences consecutively and argued to the judge not to run all the sentences consecutively.

The appellate court did not unreasonably determine the facts or misapply the *Strickland* standard. Petitioner has not established he was prejudiced by his counsel's allegedly deficient behavior because he has not alleged the specific facts to which any witness would have testified. He makes general claims about his mental health history but provides no specific facts. In his

12

Reply, he again makes general statements that his mother would have discussed "positive things about petitioner and his mental health struggles since an early age" and "Clearly, the testimony of petitioner's parents would have humanized petitioner and given a side of him of which the jury had no way of knowing." This is not enough; he must allege specific facts. *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (9th Cir. 1987) ("Mere conclusory allegations will not suffice."). The Court of Appeals' decision is entitled to deference. The Court will dismiss the Petition on this ground.

## V.     Ground Five – Denial of Severance of Counts

In his fifth ground for relief, Petitioner asserts he was denied his rights to due process of law, a fair trial, and to be tried only for the offenses charged under the Fifth and Fourteenth Amendments when the trial court denied his motion to dismiss improperly joined counts and refused to sever the counts. Petitioner believes the trial court should have severed the counts relating to the first victim from the counts relating to the second victim because they occurred at different times, in different locations, and against different victims. Petitioner raised this claim in his direct appeal.

> The Missouri Court of Appeals denied Petitioner's claim, finding as follows:
>
> Our review of claims for improper joinder and failure to sever charges involves a two-step analysis. We first determine whether joinder of the charges was proper as a matter of law. If joinder was not proper, then prejudice is presumed and severance of the charges is mandatory. If, on the other hand, we find that joinder was proper, we must determine whether the trial court abused its discretion in denying the defendant's motion to sever. The issue of whether joinder is proper is a question of law, while severance is within the trial court's discretion.
>
> Under Missouri law, joinder is proper where the charged offenses are of the same or similar character, are based on two or more acts or transactions, or are part of a common scheme or plan. In the interest of judicial economy, Missouri courts favor liberal joinder of offenses.
>
> Defendant contends that joinder was improper because the acts against N.S. were not of the same or similar character as the acts against [W.A.] The use of similar

13

tactics in the commission of multiple crimes is sufficient to show that the offenses are of the same or similar character. Those tactics need only resemble or correspond with one another, and do not need to be identical. Some of the factors courts consider to determine if a defendant's tactics are similar in character include: (1) similarity in the type of offenses; (2) similarity in the victims' sex and age group; (3) commonality in the location where the offenses took place; and (4) closeness in time between the crimes.

Our review of the record establishes a sufficient basis for a determination that Defendant used similar tactics in the commission of the acts against N.S. and W.A. The record reveals that Defendant invited each victim into a residence late at night. Defendant made sexual advances towards each victim and, when each victim refused his advances, Defendant hit her on the head with a liquor bottle. Defendant then forced each victim to perform oral sex on him. Additionally, both victims were women around twenty years of age, and both incidents occurred in the same geographic area within a period of approximately one month. Accordingly, we conclude the offenses, victims, locations, and time of the offenses were sufficiently similar to render joinder proper.

Having determined that joinder of the counts was proper, we next consider whether the trial court's denial of Defendant's motion to sever constituted an abuse of discretion. . .

. . .

Moreover, we agree with the State that the trial court did not err in denying Defendant's motion to sever because the evidence supporting each charge was distinct and uncomplicated and the trial court instructed the jury to consider each count separately. The record demonstrates that the facts relevant to each offense were not complex and the proof that the State offered as to each charge was distinct and uncomplicated. Nothing in the record indicates that the jury could not distinguish between the evidence and legal principles applicable to each crime and each victim. The State presented its evidence relating to the offenses against N.S. and then presented its evidence relating to the offenses against W.A. The State first presented the testimony of N.S., followed by the four witnesses involved in the investigation of the incident. The State then called W.A., the nurse who treated W.A. after the incident, and the two police officers involved in the investigation. None of the witnesses provided testimony about the charges relating to both N.S. and W.A. Furthermore, the trial court set out each offense in a separate jury instruction and specifically instructed the jury that each count must be considered separately. Accordingly, we conclude that the trial court did not abuse its discretion in denying severance of the offenses. Point denied.

(ECF No. 10-3, at 5-8) (internal citations and quotations omitted).

Petitioner argues the Court of Appeals' decision was contrary to and an unreasonable application of Supreme Court precedent, and an unreasonable determination of the facts based on the record. He asserts the trial court's failure to dismiss the improperly joined counts, or sever the counts, deprived him of a fair trial and rendered it fundamentally unfair. Beyond this general statement, Petitioner does not argue why the Court of Appeals' decision was unreasonable or how it incorrectly determined the facts. In his Reply, he claims the Court of Appeals made an unreasonable determination of the facts when it found the two offenses were similar because the two offenses occurred at different locations and one victim was a long-time friend while the other had only recently met Petitioner.

Petitioner has pointed out some minor differences between the two crimes. However, as the Court of Appeals found, there are many similarities between the two crimes making joinder proper. The factors determining if a defendant's tactics used to commit the crimes are similar for the purposes of joinder include - the similarity in the type of offenses, the victims' sex and age group, location of the offenses, and closeness in time between the crimes. *State v. Chambers*, 234 S.W.3d 501, 508-09 (Mo. Ct. App. 2007). Both of Petitioner's victims were around twenty years of age; Petitioner made sexual advances towards both victims; he hit both victims with a liquor bottle and forced both to perform oral sex on him. The crimes occurred in the same geographic region and were separated in time by less than one month. The Court of Appeals correctly found joinder was proper.

Furthermore, misjoinder only rises to the level of a constitutional violation if "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Mann*, 701 F.3d 274, 290 (8th Cir. 2012) (quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). Factors that might lead to a finding of prejudice include: "(1) failure to give limiting instructions; (2) evidence of guilt that is not overwhelming; (3) admission of evidence that would

15

be inadmissible in a trial of only properly joined defendants and counts; (4) evidence on the improperly joined charges that is indistinct and not easily segregated; and (5) en masse trial of numerous defendants." *Id*. Petitioner has not established any of these factors were present in his trial. The trial court instructed the jury to consider each count separately, the State presented the evidence separately with no witness testifying as to both crimes, and each offense had a separate jury instruction. These facts, found by the Court of Appeals, are presumed to be correct and are only rebutted by clear and convincing evidence, which Petitioner has not shown. 28 U.S.C. § 2254(e). The Court of Appeals' decision is entitled to deference. The Court will dismiss the Petition on this ground.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Kenneth L. Roberts for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Kenneth L. Robert's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 19th day of January, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**